production of the play by defendants is "unlawful" is, of course, merely her own conclusion, and is not the allegation of a fact. The complaint fails to point out wherein the defendant's acts are unlawful. That they produced the play without plaintiff's consent and against her objection is not sufficient, for non constat they may have acted by authority of her co-owner or co-owners, or, indeed, they or some of them may themselves be co-owners.

[3] It is settled that, with regard to property of this nature, one tenant in common has as good a right to use it, or to license third persons to use it, as has the other tenant in common, and neither can come into a court of equity and assert a superior right, unless it has been created by some contract modifying the rights which belong to the tenants in common as such. De Witt v. Elmira Nobles Mfg. Co., 66 N. Y. 459, 23 Am. Rep. 73; Clum v. Brewer, 2 Curt. 506, Fed. Cas. No. 2,909. The complaint, as it is drawn, fails to state facts showing that defendants' use of the play is unlawful.

[4] We are also of opinion that plaintiff's co-owner or co-owners should be made parties to the action. It is plain upon the face of the complaint that a complete determination of the controversy cannot be had in their absence.

The order appealed from must be reversed, with $10 costs and disbursements, and the motion to overrule the demurrer, denied, with $10 costs, with leave to plaintiff to amend her complaint within 20 days upon payment of costs in this court and at Special Term.

INGRAHAM, P. J., and LAUGHLIN and MILLER, JJ., concur. CLARKE, J., concurs solely upon the ground that the complaint does not state facts sufficient to constitute a cause of action.

---

PENNICA v. DELAWARE, L. & W. R. CO.

(Supreme Court, Appellate Division, Second Department. January 19, 1912.)

1. DOMICILE (§ 4*)—INTENT.

A subject of Italy, where his family has remained, after boarding two years at B., in New York, went to Pennsylvania, and remained there during his service of nearly four years with defendant, and nearly a year after his discharge from the hospital, where he went on being injured in defendant's service, being still in that state when his action for the injury was begun. *Held*, that he was not a resident of New York merely because when he left it he intended, on accumulating some money, to send for his family and live at B.

[Ed. Note.—For other cases, see Domicile, Cent. Dig. §§ 6–23; Dec. Dig. § 4.*]

2. MASTER AND SERVANT (§ 107*)—INJURY TO SERVANT—SAFE PLACE TO WORK —NEGLIGENCE—EVIDENCE.

There being no evidence that there were periods of the day or night when the work could have been done with less danger, defendant, in the cleaning of whose railroad tunnel, a mile in length, plaintiff was overcome by gas from trains, cannot be held guilty of negligence in not furnishing a safe place to work.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 107.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. MASTER AND SERVANT (§ 198*)—INJURY TO SERVANT—FELLOW SERVANTS.

 Any negligence of the engineer and fireman in so operating a locomotive as to give out an unusual amount of smoke and gas, overcoming one cleaning out a railroad tunnel, is that of fellow servants, for which the master is not liable.

 [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 493–514; Dec. Dig. § 198.*]

 Rich, J., dissenting.

Appeal from Trial Term, Kings County.

Action by Ignacio Caligola Pennica against the Delaware, Lackawanna & Western Railroad Company. From a judgment for plaintiff, and from an order denying a motion for new trial, defendant appeals. Reversed, and new trial granted.

Argued before JENKS, P. J., and THOMAS, CARR, WOODWARD, and RICH, JJ.

. A. J. McMahon, for appellant.

- Albert E. Richardson, for respondent.

THOMAS, J. Plaintiff, in defendant's service as a laborer for 3 years and 9 months, was on January 11, 1908, overcome by smoke and gas in a tunnel, which was about one mile in length with a single track. The accident happened in the state of Pennsylvania, where defendant was incorporated. Was the plaintiff a resident of New York? Is the defendant proven negligent?

[1] Plaintiff, a subject of Italy, where his family has remained, after boarding 2 years in Brooklyn, went to Stroudsburg, Pa., and remained during his service with the defendant, and in addition for 10 or 11 months after his discharge from the hospital, where he was for 50·days. His absence was for nearly 5 years, with an occasional visit to Brooklyn. He testified that he considered Brooklyn his home; that he went with intention to return to it, and adds:

 "I went away with the intention of working for two or three years and accumulating some money to send for my family, and I could not do that. By the Court: Q. Then where did you intend to live? A. At Brooklyn."

The facts show that his actual residence was in Italy or at Stroudsburg. He went from Brooklyn, where he had no ties and no home, to a place where he abode for all the purposes of his life, and where he was when the suit was begun. His intention when he went is not shown even to have continued, and the plan of sending for his family and living in Brooklyn never matured after 11 years in this country. His place of residence should not be ascertained from a state of mind existing at a period so remote, as declared on the witness stand, when every outward act for so many years speaks against it.

[2, 3] The smoke and gas in the tunnel overcame plaintiff and one or more other workmen. They began cleaning the tunnel on January 8th, and were on the third day of the work when, about 4 p. m., the oppression was sufficient for the injury. The plaintiff noticed gas from the day of going in. The peril seems to have arisen during the afternoon of the third day. I do not find the facts on which the jury

justifiably found the master's neglect to furnish a safe place to work. The jury by permission seem to have summoned their own knowledge, if any they had, as to the proper time and manner of doing the work and the prudent passing of trains. In view of the recognized meagerness of the evidence, or, I would say, the total abstinence of relevant and instructive evidence, the court indicated recourse to what was deemed common knowledge:

"That is the real question. [Could the railroad company, by the exercise of reasonable care, have sent him in there to do this work under conditions of greater safety?] The railroad company had 24 hours in which they could have done that work in that tunnel. There were times when the trains moved with less headway, and times when they moved with greater headway. There is a way of handling locomotives, as we all know, so they give out a great deal of smoke, or they do not. All those things are facts which you may consider."

But handling the locomotive is work of operation that falls to the engineer and fireman, and such persons were the fellow servants of the plaintiff. Hence their fault or merit is not relevant in an inquiry related to a duty of the master. Could the work by the master's direction have been done within periods when the trains passed with less frequency? The work extended through several days. Could it with less danger have been done at night, or in the morning, or at midday, or in the afternoon? I find no evidence that furnishes data for selection of some fraction of the day. The last train before the accident was "about 3 o'clock or 10 minutes after 3 or quarter after 3. Then there was no other trains up to the time I fell down." So the plaintiff testified. He was hurt at 4 or quarter to 4. Later he says:

"Trains passed every 5 minutes, every 10 minutes, every quarter of an hour, every 20 minutes."

Another witness stated that eight or nine trains passed during the afternoon. There is no evidence that trains within the 24 hours passed more advantageously for the work, and what private knowledge the jury had of the matter cannot be conjectured. It is apparent that for the three days up to the time of the accident the men worked safely. Nor does it appear that such an oppressive condition had ever before arisen. The just inference, then, is that there was an unusual accumulation of smoke or gas during the afternoon from one or more locomotives. But that arose from some action of fellow servants on the locomotives, and even if they were at fault for it the defendant is not liable.

The judgment and order should be reversed, and a new trial granted; costs to abide the event. All concur, except RICH, J., who dissents.